## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SELWYN KARP, | **Civil Action No:**  1:19-cv-5798 |
| Plaintiff, | |
| vs. | |
| CHARLES M. EDWARDS, JAMES M. GARNER, FRED H. JONES, DOUGLAS W. KROSKE, LOUIS E. BUCK, JR., ADAM W. BURRELL, CRAIG A. FOWLER, BEVERLY W. MASON, RONALD D. BEALE, R. MATTHEW DUNBAR, AND ROGER D. PLEMENS, FIRST CITIZENS BANCSHARES, INC., FIRST-CITIZENS BANK & TRUST COMPANY, FC MERGER SUBSIDIARY VII, INC., and ENTEGRA FINANCIAL CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Selwyn Karp ("Plaintiff"), by his undersigned attorneys, for his complaint against Defendants (defined below), alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Entegra Financial Corp. ("Entegra" or the "Company") and the members of the Company's Board of Directors (referred to as the "Board" or the "Individual Defendants," and, together with Entegra, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Entegra by First-Citizens Bank & Trust Company.

2.      On April 23, 2019 Entegra, First Citizens Bancshares, Inc. ("BancShares"), First-Citizens Bank & Trust Company ("FCB") a North Carolina chartered commercial bank and direct, wholly owned subsidiary of BancShares, and FC Merger Subsidiary VII ("Merger Sub"), a North Carolina corporation and direct, wholly owned subsidiary of FCB, entered into an Agreement and Plan of Merger (the "Merger Agreement"). Simultaneously with the Parties' execution of this Agreement, FCB and Entegra Bank (a North Carolina-chartered bank and direct, wholly owned subsidiary of the Company, and hereafter the "Bank") have executed and delivered an Agreement and Plan of Merger (the "Merger Agreement").

3.      Pursuant to the Merger Agreement: (i) Merger Sub will merge with and into Entegra, the separate corporate existence of Merger Sub shall cease and the Company shall continue as the surviving corporation of the Merger, as a corporation incorporated under the laws of the State of North Carolina (the Company in such capacity as the surviving corporation of the Merger is sometimes referred to herein as the "Interim Surviving Company"); and (ii) BancShares shall cause the Interim Surviving Company to be, and the Interim Surviving Company shall be, merged with and into FCB (the "Second Step Merger"), the separate corporate existence of the Interim Surviving Company shall cease and FCB shall continue, as the surviving corporation of the Second Step Merger, as a corporation chartered under the laws of the State of North Carolina (FCB in such capacity as the surviving corporation of the Second Step Merger is sometimes referred to herein as the "Surviving Corporation") (the "Proposed Transaction").

4.      On May 24, 2019, in order to convince Entegra's public common stockholders to vote in favor of the Proposed Transaction, Entegra filed a materially incomplete and misleading

Form PREM 14A Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      The Proxy contains materially incomplete and misleading information concerning the valuation analyses prepared by the Company's financial advisor, Sandler O'Neill + Partners, L.P ("Sandler"), in support of their fairness opinion.

6.      Additionally, although the Proxy does not yet set the date for the special meeting of Entegra's stockholders to vote on the Proposed Transaction (the "Stockholder Vote"), the Proxy does state the merger parties' intention to conclude this merger during the second half of 2019.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Entegra stockholders can properly exercise their corporate suffrage rights.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has

minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.       Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Entegra's common stock trades on the New York Stock Exchange (NYSE American), which is headquartered in this District, rendering venue in this District appropriate.  *See, e.g.*, *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

### Plaintiff

1.       ***Plaintiff Selwyn Karp*** is, and at all relevant times, has been an SI FI stockholder. Plaintiff Karp is a citizen of New York.  Plaintiff Karp owns 20,253 shares of Entegra stock.

### Defendants

2.       Defendant Entegra is a North Carolina corporation with its principal executive offices located at 14 One Center Court, Franklin, NC 28734.  Entegra is a holding company for Entegra Bank (the "Bank").  Entegra common stock is traded under the ticker symbol "ENFC".

3.       ***Defendant Charles M. Edwards*** ("Edwards") is, and has been at all relevant times, a director of the Company.

4.       ***Defendant James M. Garner*** ("Garner") is, and has been at all relevant times, a director of the Company.

5.       ***Defendant Fred H. Jones*** ("Jones") is, and has been at all relevant times, a director of the Company and currently serves as the Company's Chairman of the Board.

6.       ***Defendant Douglas W. Kroske*** ("Kroske") is, and has been at all relevant times, a

director of the Company.

7.     **Defendant Louis E. Buck, Jr.** ("Buck") is, and has been at all relevant times, a director of the Company.

8.     **Defendant Adam W. Burrell** ("Burrell") is, and has been at all relevant times, a director of the Company.

9.     **Defendant Craig A. Fowler** ("Fowler") is, and has been at all relevant times, a director of the Company.

10.    **Defendant Beverly W. Mason** ("Mason") is, and has been at all relevant times, a director of the Company.

11.    **Defendant Ronald D. Beale** ("Beale") is, and has been at all relevant times, a director of the Company.

12.    **Defendant R. Matthew Dunbar** ("Dunbar") is, and has been at all relevant times, a director of the Company.

13.    **Defendant Roger D. Plemens** ("Plemens") is, and has been at all relevant times, a director of the Company, and currently serves as the Company's President and Chief Executive Officer ("CEO").

14.    The parties in paragraphs 3 through 13 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants".

15.    Defendant BancShares is a Delaware Corporation with its principal executive offices located at 4300 Six Forks Road, Raleigh, NC 27609, and is a party to the Merger Agreement.

16.    Defendant FCB is a North Carolina chartered commercial bank and a direct, wholly owned subsidiary of BancShares, and is a party to the Merger Agreement.

5

17.     Defendant Merger Sub is a North Carolina corporation and direct, wholly owned subsidiary of FCB, and is a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18.     On April 24, 2019, the Company and FCB issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

**First Citizens Bank, Entegra Financial Corp. Announce Merger Agreement**

RALEIGH, N.C. and FRANKLIN, N.C., April 24, 2019 -- First-Citizens Bank & Trust Company (First Citizens Bank) and Entegra Financial Corp. (Entegra) announced today the signing of a definitive merger agreement. Entegra provides deposit and loan services through its subsidiary, Entegra Bank.

The agreement provides for the acquisition of Franklin, N.C.-based Entegra Financial Corp. by First Citizens Bank, which is headquartered in Raleigh, N.C. The announcement was made jointly by Frank B. Holding Jr., chairman and chief executive officer of First Citizens Bank, and Roger Plemens, president and chief executive officer of Entegra.

The agreement has been approved by the boards of directors of both companies. The transaction is anticipated to close during the second half of 2019, subject to the receipt of regulatory approvals, the approval of Entegra's shareholders, and the satisfaction of other customary closing conditions. Under the terms of the agreement, (1) cash consideration of $30.18 per share will be paid to the shareholders of Entegra for each share of its common stock and for each restricted stock unit after conversion to common stock, (2) each Entegra option will be canceled and each option holder will receive a cash payment and (3) no consideration will be paid to First Citizens Bank or its affiliates as a result of their ownership of shares of Entegra's common stock. As of today, First Citizens Bank and/or its affiliates own approximately 1.56% of Entegra's outstanding common stock. The total transaction value, including termination fee, is anticipated to be approximately $219.8 million.

On January 15, 2019, Entegra announced it had entered into a definitive agreement to combine with SmartFinancial, Inc. (SmartFinancial) in a strategic merger of equals, in which each share of Entegra common stock would be converted into 1.215 shares of SmartFinancial common stock. Based on the closing price of SmartFinancial's common stock of $18.40 on January 14, 2019, this implied a transaction value of $22.36 per share, or approximately $158.2 million. Subsequent to that announcement, First Citizens Bank approached Entegra and its advisors with

a significantly higher price to acquire the company. Under the terms of its definitive agreement with SmartFinancial, the board of directors of Entegra exercised its right to enter into discussions with First Citizens Bank. Ultimately, the board determined that the cash consideration offer of $30.18 from First Citizens Bank was a superior proposal to the agreement with SmartFinancial, and pursuant to its fiduciary duties and, as permitted under its agreement with SmartFinancial, entered into an agreement with First Citizens Bank. Under the terms of the First Citizens Bank agreement with Entegra, First Citizens Bank will pay a termination fee of $6.4 million to SmartFinancial on behalf of Entegra, which Entegra was obligated to pay under its agreement with SmartFinancial upon the termination of that agreement by Entegra.

As of December 31, 2018, Entegra reported $1.6 billion in consolidated assets, $1.2 billion in deposits and $1.1 billion in loans.

Entegra Bank opened in 1922 and is a state-chartered, full-service commercial bank with 18 offices and two loan production offices throughout Western North Carolina, Upstate South Carolina and North Georgia.

Customers should bank as they normally do at their existing branches, which will become part of First Citizens upon the completion of the merger.

Frank B. Holding Jr., chairman and chief executive officer of First Citizens, said: "First Citizens has a long and proud history in nearly all of these communities. We also share many core attributes with Entegra, including a commitment to service excellence and relationship banking. We look forward to building on the solid foundations both banks have established so that, together, we can better serve even more individuals and business."

Roger Plemens, president and chief executive officer of Entegra Bank, said: "We are pleased to announce this combination with First Citizens, which shares our customer focus and community banking approach. Not only does this represent a significantly higher price for our shareholders, we also believe that First Citizens' size and resources will present more opportunities in the future for our customers and communities."

Sandler O'Neill + Partners, L.P. acted as financial advisor to Entegra in connection with this transaction. Raleigh-based Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP represented First Citizens in the transaction; Hunton Andrews Kurth LLP represented Entegra.

**Additional Information**

This communication may be deemed to be a solicitation of proxies in respect of the proposed acquisition of Entegra.  In connection with the proposed merger, Entegra will prepare and send a proxy statement to each of its shareholders in connection

with a meeting of its shareholders at which shareholders will vote on approval of the merger. SHAREHOLDERS ARE URGED TO READ THE PROXY STATEMENT WHEN IT BECOMES AVAILABLE, AS WELL AS ANY AMENDMENTS OR SUPPLEMENTS TO THAT DOCUMENT, BECAUSE IT WILL CONTAIN IMPORTANT INFORMATION. The definitive proxy statement and a proxy card will be mailed to each shareholder entitled to vote at the special meeting relating to the proposed acquisition.  Investors and shareholders may obtain a free copy of the proxy statement when it becomes available, and other documents filed by Entegra, at the website of the Securities and Exchange Commission (SEC), www.sec.gov.

**About First Citizens Bank**

Founded in 1898 and headquartered in Raleigh, N.C., First Citizens Bank serves customers at more than 550 branches in 19 states. First Citizens Bank is a wholly owned subsidiary of First Citizens BancShares, Inc. (Nasdaq: FCNCA), which has $35 billion in assets as of December 31, 2018. For more information, call toll free 1.888.FC DIRECT (1.888.323.4732) or visit www.firstcitizens.com. First Citizens Bank. Forever First®.

**About Entegra Financial Corp. and Entegra Bank**

Entegra Financial Corp. is the holding company of Entegra Bank. Entegra's common stock trades on the Nasdaq Global Market under the ticker symbol "ENFC." Entegra Bank operates a total of 18 branches located throughout the Western North Carolina counties of Cherokee, Haywood, Henderson, Jackson, Macon, Polk and Transylvania; the Upstate South Carolina counties of Anderson, Greenville and Spartanburg; and the North Georgia counties of Pickens and Hall. The bank also operates loan production offices in Asheville, N.C. and Clemson, S.C. For further information, visit the bank's website: www.entegrabank.com.

**Participants in the Solicitation**

Entegra and its directors and executive officers, under SEC rules, may be deemed to be participants in the solicitation of proxies from shareholders of Entegra in connection with the proposed acquisition. Information about Entegra's directors and executive officers may be found in the definitive proxy statement for Entegra's 2018 annual meeting of shareholders, filed by Entegra with the SEC on April 2, 2018. Additional information regarding the interests of these participants will also be included in the proxy statement regarding the proposed transaction when it becomes available.

19.     The Merger Consideration is unfair because, among other things, the intrinsic value

of the Company is in excess of the amount the Company's stockholders will hold in the combined

business entity.

20.     It is therefore imperative that the Company's common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

## THE MERGER AGREEMENT

21.     Section 7.1 of the Merger Agreement contains provisions that prevents Entegra from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

Section 7.1     Acquisition Proposals

(a) The Company shall, and shall direct and cause its Subsidiaries and its and its Subsidiaries' Affiliates, directors, officers, employees, agents, and representatives (including any investment banker, financial advisor, attorney, accountant, or other representative retained by such Party or any of its Subsidiaries) to, immediately cease and cause to be terminated any activities, discussions, or negotiations with any Person other than BancShares and FCB with respect to the possibility, consideration, or consummation of any Acquisition Proposal, and will use its reasonable best efforts to enforce, and will direct and cause its Subsidiaries to use their reasonable best efforts to enforce, any confidentiality, nondisclosure, or similar agreement relating to any Acquisition Proposal, including by requesting any other party or parties thereto to promptly return or destroy any confidential information previously furnished by or on behalf of the Company Parties or any of their Subsidiaries thereunder.

(b) From the date of this Agreement until the earlier of the Effective Time and the termination of this Agreement in accordance with its terms, the Company shall not, and the Company shall direct and cause its Subsidiaries and its and its Subsidiaries' Affiliates, directors, officers, employees, agents, and representatives (including any investment banker, financial advisor, attorney, accountant, or other representative retained by such Party or any of its Subsidiaries) not to, directly or indirectly through another Person, (i) solicit, initiate, or knowingly encourage (including by way of furnishing information or assistance), or take any other action to knowingly facilitate or that could reasonably be expected to result in any inquiries or discussions regarding, or the making of any proposal or offer that constitutes or could reasonably be expected to lead to, an Acquisition Proposal; (ii) provide any non-public information or data regarding the Company or any of its Subsidiaries to

any Person other than the BancShares Parties and their Subsidiaries relating to or in connection with any Acquisition Proposal or any inquiry or indication of interest that could reasonably be expected to lead to an Acquisition Proposal; (iii) participate in any discussions or negotiations or otherwise communicate in any way with any Person other than the BancShares Parties and their Subsidiaries regarding any Acquisition Proposal; (iv) approve, endorse, or recommend, or execute, enter into, or consummate, any indication of interest, letter of intent, or other Contract (other than a confidentiality or nondisclosure agreement contemplated below in Section 7.1(c)) relating to any Acquisition Proposal or requiring the Company to abandon, terminate, or fail to consummate the transactions contemplated by this Agreement, or propose to do any of the foregoing; or (v) make or authorize any statement, recommendation, or solicitation in support of any Acquisition Proposal.

(c) Notwithstanding Section 7.1(b), the Company may, prior to the approval of this Agreement by the  shareholders of the Company in accordance with the Company's articles of incorporation and bylaws and applicable Law, if the Company's board of directors determines in good faith, after consultation with its outside legal and financial advisors, that the failure to do so would be inconsistent with its fiduciary duties under applicable Law, in response to a bona fide, written Acquisition Proposal not solicited in violation of this Section 7.1 above that the Company's board of directors determines in good faith constitutes or is reasonably likely to result in a Superior Proposal, and subject to providing 48 hours' prior written notice of its decision to take such action to the BancShares Parties and identifying the Person making the Acquisition Proposal and all of the material terms and conditions of such Acquisition Proposal and compliance with Section 7.1(d), (i) furnish information with respect to the Company and its Subsidiaries to any Person making such Acquisition Proposal pursuant to a customary confidentiality or nondisclosure agreement on terms no more favorable to such Person than the terms contained in the Confidentiality Agreement (which confidentiality agreement shall not provide such Person the exclusive right to negotiate with the Company) and (ii) participate in discussions or negotiations with such Person regarding such Acquisition Proposal.

(d) In addition to the obligations of the Company set forth above, the Company shall promptly (within not more than 24 hours) advise BancShares orally and in writing of its or any of its Subsidiaries' receipt of any Acquisition Proposal, or any request for information or inquiry which could reasonably be expected to lead to an Acquisition Proposal, and shall keep BancShares informed, on a current basis, of the continuing status thereof, including the material terms and conditions

thereof and any changes thereto, and shall provide to BancShares copies of any written materials received by the Company or any of its Subsidiaries in connection therewith. Additionally, the Company shall contemporaneously provide or make available to BancShares all materials provided or made available to any third party pursuant to this Section 7.1 which have not been previously provided or made available to BancShares.

(e) Nothing contained in this Agreement shall prohibit the Company or its board of directors from taking and disclosing to the Company's shareholders a position required by, or otherwise complying with, Rule 14e-2(a) or Rule 14d-9 promulgated under the Exchange Act or Item 1012(a) of Regulation M-A, or from making any disclosure to its's shareholders required by applicable Law; provided, however, that compliance by the Company, or its board of directors, with such rules, regulations, or applicable Law shall not in any way limit or modify the effect that any action taken pursuant to such rules, regulations, or applicable Law has under any other provision of this Agreement.

(f) Nothing contained in this Section 7.1 shall (i) prevent the Company or its board of directors from informing any Person of the Company's obligations under this Section 7.1 or (ii) prevent the Company's board of directors from taking the actions permitted by Section 7.7(b) of this Agreement.

22.     Section 9.3 of the Merger Agreement generally requires Entegra to pay $8 million as a "termination fee" to FCB in the event this agreement is terminated by Entegra.

## THE MATERIALLY INCOMPLETE AND MISLEADING PROXY

23.     On May 24, 2019, Defendants filed an incomplete and misleading Proxy with the SEC and disseminated it to the Company's stockholders.  The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

25.     Sandler was Entegra's financial advisor. There are deficiencies in the Proxy disclosures related to the financial analyses supporting the fairness opinion, as follows:

11

(a)      Sandler prepared a *Net Present Value* analysis where it estimated the implied value of Entegra by using projected earnings per share, and a P/E multiple range, and discounting that to present value.  The 2019 and 2020 EPS estimates were publicly available analysts' consensus estimates.  However, it then applied year-over-year growth rates to develop estimates of EPS for 2021 – 2023.  These growth rates are not disclosed.  Further, it states that Entegra senior management confirmed these growth rates.  The Proxy should disclose the EPS estimates for each year of the forecast period 2019 – 2023.

(b)      Sandler prepared a *Net Present Value* analysis where it estimated tangible book value for Entegra for the period 2019 – 2023.  Key metrics include the EPS estimates as well as estimated dividends for the forecast period.  Sandler said the estimated dividends per share were confirmed with Entegra senior management.  The Proxy should disclose the estimated dividends for each year of the forecast period 2019 – 2023.

26.      In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.

## COUNT I

## (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

27.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

28.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

29.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

30.     Defendants have issued the Proxy with the intention of soliciting stockholders support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information detailed above.

31.     In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a).  Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

32.     The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

33.     Defendants knew or should have known that the material information identified

above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

34.     Defendants violated securities laws in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws.  Defendants chose to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.

35.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

36.     Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF
SECTION 20(A) OF THE EXCHANGE ACT)**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

41.     In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A)     declaring that the Proxy is materially false and/or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 20, 2019

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
    Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY  10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*